UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DOUGLAS J. GOSSER, as Personal Representative OF THE ESTATE OF BRIAN LEE GOSSER, <br><br> Plaintiff, <br><br> v. <br><br> HENRY COUNTY SHERIFF'S DEPARTMENT, RICHARD A. MCCORKLE, individually and in his official capacity as Sheriff of Henry County; and BRENT GRIDER, individually and in his official capacity as Jail Commander of the Henry County Jail, OFFICER ROBERT HUXHOLD, OFFICER TERESA WEESNER, OFFICER CLARK LECHER, individually and in their official capacities as Correctional Officers, QUALITY CORRECTIONAL CARE, LLC, CHRISTOPHER STEPHENSON, P.A., TARA WESTERMAN, R.N., and DENETTE LEWARK, R.N., <br><br> Defendants. | CASE NO. 1:17-cv-03257-TWP-MPB <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br> QUALITY CORRECTIONAL CARE, LLC, <br><br> Defendant/Cross-Claimant, <br><br> v. <br><br> RICHARD A. MCCORKLE, in his capacity as Sheriff of Henry County, <br><br> Defendant/Cross-Claim Defendant. |
| RICHARD A. MCCORKLE, in his official capacity as Sheriff of Henry County, <br><br> Defendant/Cross-Claimant <br><br> v. <br><br> QUALITY CORRECTIONAL CARE, LLC, <br><br> Defendant/Cross-Clam Defendant. | |

## AFFIDAVIT OF BENJAMIN LOVERIDGE. M.D.

I, Benjamin Loveridge, M.D., do hereby swear and affirm that:

1. This Affidavit is made upon my personal knowledge. I am an adult of sound mind and competent to testify to the matters stated herein.

2. At all times relevant, I was a medical licensed to practice medicine in Indiana, holding license number 01066134A.

3. At all times relevant, I was employed by Quality Correctional Care, L.L.C (hereinafter "QCC") as an independent contract physician.

4. The "County Jails Policies and Procedures" and "Nursing Protocols" were available at the Henry County Jail during the relevant period were promulgated by the National Commission on Correctional Health Care ("NCCHC").

5. The "County Jails Policies and Procedures" and "Nursing Protocols" were approved by QCC's Chief Medical Officer, Dr. Quinten Emerson, M.D.

6. Myself, Tara Westermen, R.N., Denette Lewark, R.N., and Christopher Stephenson, P.A. had no authority to approve, implement, select or change the protocols.

7. The "County Jails Policies and Procedures" are provided in order to assist correctional officers in gathering information on an inmate's condition for medical staff when they are not on site.

8. The same is true for the "Nursing Protocols." The "Nursing Protocols" are made available to nursing staff as a tool to aid or assist the nurses' assessment(s) of inmates on an as-needed basis.

9. The "Nursing Protocols" are not intended to be a substitute for a nurse's education, training, and experience.

10. "County Jails Policies and Procedures" and "Nursing Protocols" serve as a reference source when needed.

11. My duties for QCC included, but not limited to, examining inmates at QCC jails weekly, reviewing medical charts every month at the Henry County Jail, and on-call consulting with QCC medical staff.

12. In February and March of 2016, I was the physician reviewing the inmate medical charts at the Henry County Jail every month. I was also available for on-call consulting as needed.

13. The QCC medical staff assigned to the Henry County Jail during this same period were Tara Westermen, R.N., Denette Lewark, R.N., and Christopher Stephenson, P.A.

14. Stephenson was providing health care services as a Physician's Assistant with Dr. Emerson serving as Stephenson's collaborative physician in accordance with Indiana law.

15. In addition to Dr. Emerson's collaborative supervision of Stephenson, I was also reviewing the charts of Stephenson, Nurse Westermen, and Nurse Lewark for compliance with the applicable standards, policies, and procedures of medical care.

16. On March 4, 2016, as part of my regular duties for QCC, I reviewed medical charts, including the medical records for Brian Gosser, at the Henry County Jail. [Westermen Deposition Ex. 27].

17. On February 17, 2016, the Henry County Hospital provided medical clearance for Gosser to be admitted to the Jail.

18. On Monday, February 23, 2016, Gosser was evaluated by Westermen and Stephenson in response to Gosser's weekend medical requests. There were no indications that Gosser was suffering from withdraw or a concussion. Gosser's vitals (blood pressure,

respiration rate, and pulse) were within acceptable ranges and nonemergent. The assessment and treatment were timely and medically appropriate.

19. On February 24, 2016, Gosser submitted a request for over the counter medication for tooth pain. Gosser was evaluated by Westermen. The assessment and treatment were timely and medically appropriate.

20. On February 26, Gosser was evaluated by Lewark in response to tooth pain and rib pain from slipping "on wet floor." The assessment and treatment were timely and medically appropriate.

21. On February 27, 2016, Lewark initiated an assessment of Gosser after observing injuries consistent with a physical altercation. As a result of the assessment, Gosser was sent to the Henry County Hospital Emergency Room. The assessment and treatment were timely and medically appropriate.

22. After approximately (3) hours at the Henry County Hospital Emergency Room, Gosser was discharged as stable with nonemergent, non-life-threatening diagnoses.

23. The discharge instructions stated that Gosser: 1) needs to be monitored for (24) hours for signs of head injury; 2) should be rechecked by a physician within (48) hours; 3) should return to the ER at once for any changing/worsening symptoms or any concerns; and 4) be given Tylenol and ibuprofen for pain and Benadryl for sleeping.

24. Deviations in those recommendations for stable patients with nonemergent, non-life-threatening diagnoses would be medically appropriate. In this case:

    a. Gosser was under (24) hour monitoring at the Henry County Jail;

    b. Although the instruction stated Gosser *should* be rechecked by a physician within (48) hours, he was rechecked by Stephenson within (4) days. Based on the

        circumstances of incarceration and available information, this was timely and medically appropriate.

    c.    When Gosser's condition worsened, he was taken to the Henry County Hospital Emergency Room.

    d.    Gosser was receiving Ibuprofen.

25.    On February 28, 2016, Lewark initiated an assessment of Gosser after an early morning telephone call with a corresponding protocol. The assessment and treatment were timely and medically appropriate.

26.    On March 2, 2016, Stephenson completed an assessment of Gosser. The assessment and treatment were timely and medically appropriate. The addition of a more detailed late entry is common in the practice of medicine and well within the medical standard of care.

27.    On March 3, 2016, Lewark completed an assessment of Gosser, including ordering an x-ray. Westermen and Stephenson reviewed the x-ray results and ultimately sent Gosser to the Henry County Emergency Room. The assessments and treatments were timely and medically appropriate. The addition of a more detailed late entry is common in the practice of medicine and well within the medical standard of care.

28.    In my medical opinion, based on the information available to Lewark, Westermen, and Stephenson, the medical standard of care was followed, and Gosser received appropriate medical and nursing care and treatment.

**Further Affiant sayeth not.**

I AFFIRM, UNDER THE PENALTIES FOR PERJURY, THAT THE FOREGOING REPRESENTATIONS ARE TRUE AND ACCURATE TO THE BEST OF MY KNOWLEDGE.

Date: 3/28/2019

_____
Dr. Benjamin Loveridge, M.D.